UNITED STATES of America,
Plaintiff-Appellee,

v.

Fred BOSTON, Defendant-Appellant.

No. 263, Docket 28491.

United States Court of Appeals
Second Circuit.

Argued Jan. 14, 1964.

Decided March 24, 1964.

Certiorari Denied June 22, 1964.

See 84 S.Ct. 1940.

Donald N. Ruby, Asst. U. S. Atty. for the Eastern District of New York, new for the Eastern District of New York, on the brief, for plaintiff-appellee.

Lester Landy, Brooklyn, N. Y. (Landy & Schwartz, Brooklyn, N. Y., on the brief), for defendant-appellant.

Before SWAN, MOORE and SMITH, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Appellant, Fred Boston, was convicted, after a trial without a jury, on one count for possession or transportation of non-taxpaid distilled spirits in violation of 26 U.S.C. § 5205(a) (2), on three counts for possession or control of an unregistered still in a dwelling house in violation of 26 U.S.C. §§ 5179(a), 5178(a) (1) and 5601(a) (8), respectively, and on one count for a conspiracy in violation of 18 U.S.C. § 371. He was sentenced to two years imprisonment on each count, the sentences to run concurrently.

Appellant first challenges the introduction into evidence of contraband seized from him. The facts of this seizure are clear. Federal revenue agents were acting upon a lead given to them at approximately 8:00 P.M. on March 23, 1962, by a reliable informant. Several months prior to the receipt of this information, one of the agents had observed appellant purchase approximately 600 pounds of sugar, an ingredient in the manufacture of alcohol, from a grocery store in Brooklyn, New York, and deposit it into a green 1960 Pontiac automobile. The informant indicated that later that same night appellant would be transporting non-taxpaid distilled spirits in the vicinity of a certain address in Brooklyn, New York. At 10:30 P.M. that night, the agents observed appellant and another man park the same green 1960 Pontiac automobile across the street from the designated building and enter the building. While the two suspects were in the building, the agents approached the auto-

mobile and observed on the back seat a carton marked "mason jars." Jars of this type were, in the experience of the agents, the containers most frequently used in the transportation of non-taxpaid distilled spirits. The agents also at this time detected an odor of distilled spirits emanating from the automobile. The agents soon observed the suspects emerge from the building and return to pick up the carton. As appellant, still in the company of the other suspect, walked from the automobile carrying the carton, which was damp on its underside and which had a distinct odor of distilled spirits, the agents intercepted him and identified themselves as federal officers. They inquired as to the contents of the carton. No response was given to this inquiry. As appellant held the carton, the agents thereupon, without arrest or search warrants, examined its contents. This examination revealed that the six one-half gallon jars in the carton contained colorless distilled spirits and that no revenue stamps were affixed to the jars. At this juncture, the agents formally announced the arrest of appellant and took possession of the carton and its contents.

The facts clearly support the trial court's determination that the agents arrested appellant upon "probable cause." The arrest was not in violation of the Fourth Amendment or Rule 41(c) and (e) (4) of the Federal Rules of Criminal Procedure, cf. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); Hagans v. United States, 315 F.2d 67 (5th Cir.), cert. denied, 375 U.S. 826, 84 S.Ct. 68, 11 L.Ed. 2d 58 (1963), and was not made upon mere suspicion, cf. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134 (1959). There were also "reasonable grounds" within the meaning of 26 U.S.C. § 7608(a) (3) giving federal revenue agents the power to make arrests without warrant.[1] Nor did the arrest rest upon the fruits of the seizure, cf.

---

1. "Probable cause" and "reasonable grounds" have substantially the same meaning. Cf. Wong Sun v. United States,

371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Draper v. United States, supra.

United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), since probable cause and reasonable grounds for the arrest existed prior to the search. That the search and seizure may have preceded the formal announcement of the arrest by a few moments is not vital. Indeed, the arrest was commenced upon the initial interruption of appellant's liberty. See Henry v. United States, supra. Hence, the contraband seized during the search was admissible into evidence, because the search and seizure, reasonably made, see Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), were justifiable as incidental to lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Furthermore, the search and seizure might well have been justified as made upon probable cause. Cf. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 43 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); United States v. Kancso, 252 F.2d 220, 224 (2d Cir. 1958).[2]

■ Appellant also challenges the introduction into evidence of contraband seized from a dwelling house. Here again, federal agents were acting upon a lead given to them by a reliable informant. However, the agents were in this instance able to obtain a search warrant prior to the search. The warrant was issued on the morning of July 31, 1962, upon an affidavit in which one of the agents swore that he had reason to believe that a quantity of non-taxpaid distilled spirits and an unregistered still were concealed in a certain dwelling house in Queens, New York. The supporting facts in the affidavit were that the information concerning the contents of the designated dwelling house was given to him by a "previously reliable informant," that he observed a delivery of a large quantity of yeast to the house, that on the same day the affidavit was executed he smelled an unmistakable odor of distilled spirits emanating from the house, and that he observed, also that same day, the withdrawal of non-taxpaid distilled spirits from the house to an automobile. The determination of the contraband nature of the shipment was made during an interception of the automobile's departure from the house at approximately 12:30 A.M. and a search of the automobile.[3] The warrant to search the house was obtained later that morning and the search was conducted at approximately 1:30 P.M. that same day. A 150 gallon still and related equipment, including 450 gallons of mash and a quantity of non-taxpaid distilled spirits, were found in the basement of the house.

26 U.S.C. § 7606(a) authorizes federal revenue agents to enter premises in the daytime for the purpose of examining taxable objects and 26 U.S.C. §§ 5557(a), 7302 and 7608(a) (2) provide that they may execute and serve search warrants. Moreover, 26 U.S.C. § 7608(a) (4) gives the agents the power to make seizures of property subject to forfeiture to the United States, as was the unregistered still under 26 U.S.C. § 5615(1). In the light of these statutory provisions, the sworn facts in the affidavit, upon which the search warrant was based, clearly

2. 26 U.S.C. §§ 7608(a) (4) and 7321 give revenue agents power to make a seizure, without a search warrant, of property subject to forfeiture to the United States, as was the non-taxpaid distilled spirits under 26 U.S.C. § 5613(b), apart from the incidence of the search to a lawful arrest. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) similarly involved a liquor seizure statute, since repealed. That case upheld, on the basis of the statute, a seizure by prohibition officers, upon probable cause and without arrest or search warrants, of forfeitable contraband in the course of transportation, the arrest being incidental to the seizure.

3. No objection was made to this search before or during the trial. See United States v. Freeman, 302 F.2d 347 (2d Cir. 1962); United States v. Stallings, 273 F.2d 740 (2d Cir. 1960); United States v. Herskovitz, 209 F.2d 881 (2d Cir. 1954).

support the trial court's conclusion that the warrant was validly issued upon probable cause, cf. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960); United States v. Ramirez, 279 F.2d 712 (2 Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed. 2d 74 (1960), that, as a consequence, the search and seizure, reasonably made, were lawful, and that, as a further consequence, the contraband seized during the search was admissible into evidence.

The facts relating to the first two categories of evidence appear to have been well known to appellant during the four-month interval between the time appellant, with counsel, entered a plea to the indictment and the time the trial commenced. However, since we conclude that this evidence was admissible, we need not reach the question of whether the trial court abused its discretion in first reserving decision on, and then denying under Rule 41(e) of the Federal Rules of Criminal Procedure, the motion to suppress the evidence as not timely made.

■ Finally, appellant challenges the use of police or "rogues gallery" photographs of the other co-conspirators in the case who had previously pleaded guilty to the conspiracy count and who had been convicted prior to appellant's trial. The photographs were validly used in the prosecution of the conspiracy charge to enable various witnesses to establish the identity of the co-conspirators, as bearing upon their relationship to, and association with, appellant. See 3 Wigmore, Evidence §§ 792–3 (3d ed. 1940). There being no jury, the presence of the police numbers on the photographs was not prejudicial especially in the light of the assurances by the trial judge against such harm. The photographs, being preferable to verbal descriptions, were used as non-verbal modes of expressing the witnesses' testimony; consequently, it was the witnesses, not the co-conspirators, who were properly the subject of cross-examination. Furthermore, if appellant desired a confrontation with the co-conspirators, he could very well have called them to appear. Hence, since the respective witnesses identified each of the persons in the photographs, this category of evidence was also admissible.

■ There being sufficient evidence to support the conviction on all counts, the judgment of the trial court is affirmed in all respects.