**UNITED STATES of America,**

v.

**Robert W. COWAN, Defendant.**

United States District Court
S. D. New York.

April 14, 1965.

Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York, New York City, for United States, Robert L. Latchford, Asst. U. S. Atty., of counsel.

Irving Younger, New York City, for defendant.

WEINFELD, District Judge.

The defendant, charged with unlawful possession of property stolen from interstate commerce, moves under Rule 41(e) of the Federal Rules of Criminal Procedure to suppress as evidence two pieces of baggage, some clothing and certain personal articles. He advances two grounds: First, violation of his Fourth Amendment right in that the items were searched and seized without his consent while in the physical possession of another, when the investigators had no warrant and had made no arrest; second, violation of his right to a preliminary hearing before the United States Commissioner, as required by Rule 5(c) of the Federal Rules of Criminal Procedure, he not having waived his right thereto.

I

Testimony was taken with respect to the issues which developed the following:

On March 23, 1963 the defendant, under the name Robert Kelly, registered at the Sutton East Hotel in mid-Manhattan and was assigned Room 503 on a daily

basis. He was in arrears in the payment of rent by March 27. On March 28 the hotel manager, upon learning the room had been unoccupied the previous night, plugged the lock. On March 29 the room still was unoccupied and unpaid for; thereupon the manager entered the room, placed the guest's personal effects into open suitcases, and removed the bags, seven in all, to the hotel office.

Later that day Federal agents, who several days earlier had received information that a Robert Kelly living at the Sutton East Hotel was trying to sell items stolen from Idlewild International Airport, called upon the hotel manager. With the manager's consent the agents— who had no warrant—examined the contents of the unlocked bags which had been removed from Room 503. Upon checking certain identifying marks with the airlines, the agents had probable cause to believe that some of the items Kelly had left behind in Room 503 had been stolen from Idlewild. He was not arrested until April 8.

The defendant concedes that at the time of the search by Federal agents he had already been evicted from his room and the hotel had acquired a lien on the baggage for unpaid rent.[1] He argues, however, that the hotel manager's interest was limited, that his right to examine the bags in order to comply with the statutory requirement of public notice before sale [2] did not empower him to consent to their search by others, any more than his unquestioned right to inspect the room of a paid-up guest empowers him to consent to its search by police.[3]

This argument has three flaws. First, at the time of the search the defendant, by reason of nonpayment of rent, had already forfeited his right to possession of the bags; when the hotel exercised its statutory lien it had legal possession.[4] Thus, there was no violation of the defendant's Fourth Amendment right,[5] particularly so where the search was consented to by the only one lawfully in possession.[6] This circumstance immediately distinguishes the instant case from such cases as Stoner v. State of California,[7] where a paid-up guest's room was invaded upon the "consent" of the hotel owner.

Secondly, the hotel's lien was put in jeopardy by the information, imparted to its manager, that some or all of the baggage which Robert Kelly had brought into the hotel and left behind may have been stolen.[8] To protect itself, the hotel

1. N.Y. Lien Law, McKinney's Consol.Laws, c. 33, § 181.

2. N.Y.General Business Law, McKinney's Consol.Laws, c. 20, § 207. Indeed, had the hotel manager sold the bags without inventorying and exhibiting their contents, he would render himself liable as a converter. See Lane v. Hotel Investors, Inc., 29 N.Y.S.2d 364 (1st Dep't 1941).

3. See Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949).

4. Roth v. Hotel Riverside Plaza, Inc., 188 Misc. 180, 67 N.Y.S.2d 518 (1st Dep't 1947).

5. See Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Epstein, 240 F.Supp. 80, 84 (S.D.N.Y.1965).

6. Von Eichelberger v. United States, 252 F.2d 184, 186 (9th Cir. 1958); United States v. Walker, 190 F.2d 481, 483 (2d Cir. 1951); United States v. Ebeling, 146 F.2d 254, 257 (2d Cir. 1944); United States v. Reiburn, 127 F.2d 525 (2d Cir. 1942). See Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

7. 376 U.S. 483, 84 S.Ct. 889 (1964).

8. N.Y. Lien Law § 181 provides, in part: "If the keeper of such hotel * * * knew that the property brought upon his premises was not, when brought, legally in possession of such guest * * * or had notice that such property was not then the property of such guest * * * a lien thereon does not exist."

had a right to inquire into the lawfulness of Kelly's interest in the property. That right included permitting third parties, including Government agents, to examine the bags for indicia of theft. In this circumstance, it cannot be said that the ensuing search was unreasonable.

Finally, this record supports a finding that the defendant intentionally abandoned the room and its contents several days before the search of the baggage on March 29. Not only had he not slept in his room on the 27th, but never returned or communicated with the hotel thereafter. Whatever the reason for his disappearance, the Court finds that the defendant abandoned the bags before they were searched.[9]

The motion to suppress on the ground of the unlawfulness of the search is denied.

## II

The second issue raised by the defendant is based upon an alleged failure to afford him a preliminary hearing under Rule 5 of the Federal Rules of Criminal Procedure.[10] The defendant was arrested on April 8, 1963 as he emerged from a mid-Manhattan restaurant, taken to FBI headquarters, and then brought before the United States Commissioner. The Commissioner advised him of his rights under the Rule. In the absence of a waiver, a hearing was scheduled for April 22. Bail was not fixed, but the defendant was released on his own recognizance, since he was to be taken into custody forthwith as a state parole violator. He was then lodged in the Tombs under the state charge. During his incarceration the preliminary hearing on the Federal charge was adjourned from April 22, the original scheduled date, to April 29; then to May 6, to May 20, to June 17, and finally to July 1, when the complaint was dismissed. The reason for the dismissal was that the grand jury had returned an indictment three days earlier. All adjournments were taken in the absence of the defendant and upon the ex parte action of an Assistant United States Attorney. Indeed, it appears that no request was made to the Commissioner for any adjournment, but his calendar was marked the afternoon before by the Assistant with whatever date he thought appropriate.

This practice of adjourning scheduled preliminary hearings in the absence of and without the consent of an accused and without action by the Commissioner himself does not comply with the Rule and should not be countenanced. Its propriety has previously been questioned,[11] but apparently to no purpose. An application for a postponement of a hearing under Rule 5, in appropriate circumstances, is addressed to the discretion of the Commissioner to be passed upon by him with an opportunity to the defendant to be heard in opposition. It is not to be unilaterally determined by an adversary in the proceeding. However, it does not follow that the defendant is entitled to suppress the evidence. The failure to conduct the hearing either on April 22 or any other adjourned date bears no relationship to the evidence sought to be suppressed, the search having occurred ten days before the defendant's arrest

---

9. See Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683 (1960); Feguer v. United States, 302 F.2d 214, 249 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962).

10. Fed.R.Crim.P. 5(c) provides, in part: "Preliminary Examination. The defendant shall not be called upon to plead. If the defendant waives pre-

liminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time."

11. United States v. Universita, 192 F. Supp. 154 (S.D.N.Y.1961).

**218**

and prior to the time the defendant was entitled to a preliminary hearing. Accordingly, the successive postponements without notice to him do not invalidate the search,[12] and the motion to suppress on this ground is denied.

The defendant, however, urges that unless sanctions are imposed—and he suggests dismissal of the indictment— the practice will continue unabated and that the sound administration of criminal justice requires enforcement of the Rules. However, the circumstances of this case do not warrant such drastic relief. The fact is, upon the defendant's release upon his own recognizance in order to face the state charge, the hearing was set for April 22. He was then confined on the state charge, but made no inquiry on April 22 or thereafter as to a hearing. He raised no issue as to the failure to proceed with the taking of evidence.[13] It is realistic to say he was content to face the state charge, to let the Federal matter rest and that he acquiesced in the continuances. In any event, he was not prejudiced by the failure to give him a hearing. This is not a case where the Government obtained statements or evidence hostile to the defendant's interest by reason of failure to give him a hearing. The Government's evidence was acquired before he was brought before the Commissioner. Thereafter his matter remained in status quo until the return of the indictment. Without deciding whether a violation of Rule 5(c) would ever warrant dismissal of an indictment,[14] the Court concludes that such a remedy is inappropriate in the circumstances here present.

The defendant's motion is in all respects denied.

12. United States v. Klapholz, 17 F.R.D 18, 23 (S.D.N.Y.1955), aff'd, 230 F.2d 494, 498 (2d Cir.), cert. denied, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956).

13. Cf. United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

14. Compare United States v. D'Angiolillo, 340 F.2d 453, 456 (2d Cir.), cert. denied, 85 S.Ct. 1090 (U.S., March 29, 1965); United States v. Kenner, 36 F.R.D. 391, 393 (S.D.N.Y.1965).