J-S27041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMAR CHARLES EDMONDS, | |
| Appellant | No. 1520 MDA 2015 |

Appeal from the Judgment of Sentence March 25, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000772-2014

BEFORE: SHOGAN, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:            **FILED MARCH 22, 2016**

Appellant Jamar Charles Edmonds appeals from the judgment of sentence entered in the Court of Common Pleas of Lebanon County by the Honorable John C. Tylwalk on March 25, 2015, following his convictions of Persons not to possess, use, manufacture, control, sell or transfer firearms, Firearms not to be carried without a license, Possession of drug paraphernalia and a violation of The Controlled Substance, Drug, Device and Cosmetic Act.[1] Upon our review of the record, we affirm.

The trial court aptly set forth the relevant facts and procedural history herein as follows:

---

[1] 18 Pa. C.S.A. §§ 6105(a)(1); 6106(a)(1); 35 P.S. §§ 780-113(a)(32), (30), respectively.

*Former Justice specially assigned to the Superior Court.

[Appellant] was charged with Possession With Intent to Deliver a Controlled Substance (Heroin), Persons Not to Possess a Firearm, Firearms Not to be Carried Without a License, Possession of Drug Paraphernalia, Possession of a Controlled Substance (Heroin), Simple Assault, and two counts of Recklessly Endangering Another Person[1] as the result of an incident which occurred on March 26, 2014. Defendant initially filed a *pro se* Motion to Suppress. An Amended Motion seeking suppression and dismissal of the charges was subsequently filed by counsel. We conducted a hearing on the Motion on August 27, 2014. At that hearing, Officer David Lear testified as to the circumstances which led to [Appellant's] arrest and the confiscation of the evidence. On October 15, 2014, we issued an Order and Opinion denying [Appellant's] request for suppression.

After a jury trial was conducted on February 11, 2015, [Appellant] was found guilty of Count 2 - Person Not to Possess, Manufacture, Control, Sell or Transfer Firearm, Count 3 - Firearms Not to be Carried Without a License, Count 4 - Possession of Paraphernalia, and Count 5 - Possession of Heroin. Due to the non-appearance of two Commonwealth witnesses, the Simple Assault count and the two counts of Recklessly Endangering Another Person were *nol prossed*.

At the jury trial, Officer David Lear of the Lebanon City Police testified that on March 26, 2014, he was dispatched for a report of an individual threatening other persons with a gun at a residence located at 32 North 12th Street in the City of Lebanon. The suspect was described as a black male with a beard wearing a black top and blue pants. The suspect was reported to have just left the residence and to be heading south on 12th Street from Number 32. As Officer Lear neared the scene, he received another report that the suspect was known to the persons he had threatened and was then heading north on 12th Street toward his own residence which had a red car parked in front of it.

Officer Lear proceeded to that area and observed a red vehicle parked on 12th Street. He also observed [Appellant], who fit the description of the suspect, emerging from the rear of the area near house numbers 59 and 61, which corresponded to where the red car was parked. When [Appellant] noticed Officer Lear, he walked away and turned into an alley. When Officer Lear entered the alley, he lost sight of [Appellant] for a few seconds, but then found him standing beside a vehicle which he was about to enter. After [Appellant] got into the vehicle, Officer Lear activated his lights and stopped his own vehicle. He then

- 2 -

commanded the female driver, Yomara Berrios, and [Appellant] to show their hands. [Appellant], who was in the front passenger seat of the vehicle, refused to show his hands and could be seen reaching down between his legs and around the side of the seats. Office Lear was unable to see whether he was reaching for a weapon. Officer Lear repeated his commands, but [Appellant] continued to refuse to show his hands. [Appellant] got out of the vehicle and fled the scene. He was apprehended a few blocks away by other officers who arrived on the scene.

After [Appellant] fled, Officer Lear had Berrios exit the vehicle while he checked it. The front passenger-side door had been left open by Defendant. When Officer Lear looked inside, he could see the butt of a pistol sticking out from under the passenger seat, where he had observed Defendant reaching. Officer Lear then spoke with Berrios, who agreed that he could search the car. Officer Lear also found a bookbag on the back seat. Berrios informed Officer Lear that the bookbag belonged to [Appellant]. Officer Lear checked it and found approximately three hundred dollars ($300.00) in currency and school items with [Appellant's] name on them. He secured the bag at the scene. When [Appellant] was apprehended by the other officers a few blocks away, eleven glassine baggies containing a substance which was suspected to be heroin, a rubber band, an additional sixty dollars ($60.00) and two cell phones were found on his person.

Detective Keith Uhrich testified that he was one of the police officers who had responded to assist Officer Lear. Detective Uhrich interviewed [Appellant] shortly after his arrest. During the interview, Defendant admitted that the gun found in Berrios' car belonged to him.[2]

The parties stipulated that [Appellant] was a person who was prohibited by law in Pennsylvania from possessing a firearm because of a prior conviction. It was also stipulated that the glassine baggies contained a total of twenty–seven (27) grams of heroin.

At the trial, Berrios testified that she and [Appellant] were friends. She explained that she is the only person who drives her vehicle and that she has three children who have access to it. She further testified that the gun did not belong to her, that she had never seen it before, that it was not there before [Appellant] got in, and that she did not know it was in her car once [Appellant] had entered. She did not see [Appellant] put the gun down beneath the seat as she was facing toward the window when Officer Lear was approaching her vehicle.

[Appellant's] stepfather, Wilbert Lewis, testified that in March 2014 he had given [Appellant] three hundred dollars ($300.00) in cash as [Appellant] was going to pay his electric bill for him. He explained that he had arranged for [Appellant] to run the errand for him as he did not want to bring the cash to his own place of employment.

[Appellant] also testified at the trial. He noted that the car belonged to Berrios. He insisted that he did not have a gun when he got into the car and that he did not know it was there. When Officer Lear told [Appellant] and Berrios to show their hands, [Appellant] ran because he did not want to go to jail. He explained that he had sniffed heroin approximately a half hour before this incident. He claimed that he admitted that the gun belonged to him during the interview because he did not want anyone else to get in trouble. [Appellant] also claimed that he did not know why he was being pursued by the police and had fled from Officer Lear because had had seen the red lights from the police vehicle.

_____

[1]Counts 1 through 8, 35 P.S. §780-113(a)(30), 18 Pa.C.S.A. §6105(a)(1), 18 Pa.C.S.A. §6106(a)(1), 35 P.S. §780-113(a)(32), 35 P.S. §780- 113(a)(16), 18 Pa.C.S.A.§2701(a)(3), and 18 Pa.C.S.A. §2705, respectively.
[2]A recording of this interview was played at trial. (Exhibit "9")

Trial Court Opinion, filed August 3, 2015, at 1-6.

On March 25, 2015, Appellant received an aggregate sentence of five years to ten years in prison. Appellant filed his consolidated post-sentence motions on April 6, 2015, and the trial court denied the same on August 3, 2015. This timely appeal followed.

On appeal, Appellant raises the following questions for our review:

I.    Should [Appellant's] Motion for Judgment of Acquittal be granted because the Commonwealth failed to present sufficient evidence at trial to prove beyond a reasonable doubt that [Appellant] was the person who possessed the firearm found in Jomara Berrios' car on March 26, 2015?

- 4 -

II.     Should [Appellant's] Motion for a New Trial be granted because the Trial Court erred by denying [Appellant's] Omnibus Pretrial Motion to Suppress Evidence and Dismiss Charges?

III.     Should [Appellant's] Motion for a New Trial be granted because the jury placed too great a weight on the testimony of the [sic] Jomara Berrios?

Brief of Appellant at 4.

Appellant first contends the Commonwealth failed to present sufficient evidence to convict him of the firearms charges. Our standard of review in assessing the sufficiency of the evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa.Super. 2015) (citation omitted).

Section 6105(a) provides that "a person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a

firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1). Further, a person is guilty of carrying a firearm without a license if he "carries a firearm in any vehicle or . . . concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license. . . . " 18 Pa.C.S.A. § 6106(a)(1). The Commonwealth may prove a defendant carried a firearm inside a vehicle through evidence of either actual or constructive possession. *See Commonwealth v. Hopkins*, 67 A.3d 817, 821 (Pa.Super. 2013) (evidence was sufficient to show defendant constructively possessed firearm found in a vehicle he was driving, as required to support convictions for carrying a firearm without a license; firearm was discovered within arm's length of where defendant had been seated).

Upon our review of Appellant's appellate brief, we find he has waived this issue for lack of development. The Pennsylvania Rules of Appellate Procedure unequivocally state that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa.Super. 2002); Pa.R.A.P. 2119(b). Appellate arguments which fail to adhere to these procedural rules may be considered waived, and arguments which are not appropriately developed are waived. The latter include those where the party has failed to cite any authority in support of a contention. *Lackner v. Glosser,* 892 A.2d 21, 29–30 (Pa.Super. 2006). This Court will not act as counsel and will not

develop arguments on behalf of an appellant. ***Irwin Union National Bank***

***and Trust Company v. Famous and Famous and ATL Ventures****, 4 A.3d

1099, 1103 (Pa.Super. 2010).

The entirety of Appellant's argument pertaining to this issue reads as

follows:

> [Appellant] asserts that the Commonwealth failed to present sufficient evidence at trial to prove that he possessed the firearm found in Berrios' car. Specifically, [Appellant] alleges the following facts presented at trial demonstrate that he did not possess the firearm:
> (1)    Ofc. Lear did not see [Appellant] holding a firearm prior to [Appellant] entering Berrios' car (Notes of Trial, 22).
> (2)    Ofc. Lear did not see [Appellant] holding a firearm while [Appellant] was inside of Berrios' car. (N.T. 22).
> (3)    No fingerprint or DNA analysis was presented at trial to show that [Appellants'] fingerprints or DNA were found on the firearm. (N.T. 22).
> (4)    [Appellant] testified at trial that at no time on March 26, 2015 did he possess a firearm. (N.T. 44-45).
> (5)    Berrios testified at trial that on March 26, 2014, she neither saw [Appellant] possess a firearm, nor did she see [Appellant] place a firearm underneath the passenger seat of her car. (N.T. 54).

Brief of Appellant at 10.

As the aforementioned quotation therefrom illustrates, the argument

portion of Appellant's brief does not contain meaningful discussion of, or

citation to, relevant legal authority with regard to a sufficiency of the

evidence challenge. Such lack of analysis precludes meaningful appellate

review. Accordingly, we conclude that the issue is waived for lack of

development. *Coulter v. Ramsden*, 94 A.3d 1080, 1088–1090 (Pa.Super. 2014).[2]

Before considering the merits of Appellant's second issue, we must first consider whether Appellant has properly preserved it for our review. As this Court has noted, a timely-filed Pa.R.A.P. 1925(b) statement does not automatically equate to issue preservation. *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa.Super. 2008). "[T]he Pa.R.A.P.1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal. . . ." *Id.* In this regard, Pa.R.A.P. 1925(b) provides in pertinent part:

> (4) Requirements; waiver.
> ....
> (ii) The Statement **shall concisely** identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.
> ....
> (vii) **Issues not included in the Statement and/or not raised in accordance with the provisions** of this paragraph (b)(4) are waived.

_____

[2] Notwithstanding, in highlighting these five points, Appellant fails to acknowledge that one may be deemed in constructive possession of a firearm. *Hopkins*, *supra*. Officer Lear testified Appellant refused to show his hands while in the vehicle and reached around the seats and between his legs. After Appellant fled, Officer Lear located the firearm under the passenger seat, the area wherein Appellant had been touching. Appellant also ignores the fact that Appellant later admitted to officers the firearm belonged to him, while Ms. Berrios denied ownership of it.

Pa.R.A.P. 1925(b) (emphasis added).

In ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa.Super. 1998), our Supreme Court held that when a trial court directs a defendant to file a concise statement of matters complained of on appeal, "any issues not raised in a 1925(b) statement will be waived." In ***Commonwealth v. Dowling***, 778 A.2d 683, 686–87 (Pa.Super. 2001), this Court extended that holding to include vague 1925(b) statements and in doing so held that "a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." ***Id.*** Therefore, an appellant waives any issues he attempts to raise in a Rule 1925(b) statement the vagary of which prevents the trial court from sufficiently identifying and properly addressing them. This remains true even if the trial court correctly guesses the issues the appellant wished to assert on appeal and writes an opinion pursuant to that supposition. ***Commonwealth v. Heggins***, 809 A.2d 908, 912 (Pa.Super. 2002).

In his concise statement of matters complained of on appeal, Appellant framed his challenge to the suppression court's denial of his pretrial motions as follows:

> 2.   The Trial Court erred in denying [Appellant's] Motion for a New Trial because the Trial Court erred by denying [Appellant's] Omnibus Pretrial motion to Suppress Evidence and Dismiss Charges.

Concise Statement of Matters Complained of on Appel Statement Pursuant to Pa.R.A.P. 1925(b) at ¶ 2. This language does not specify which evidence the

trial court erred in failing to suppress and which elements of the four charges offenses were unproven thus justifying the dismissal of those charges.

In addition, Appellant does not resolve this confusion in his appellate brief, for he frames his second issue in the statement of questions involved portion thereof in terms of the same, general language. *See Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa.Super. 2006) (holding that this Court will not consider any issue if it has not been set forth in or suggested by the statement of questions involved) *see also* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). As such, this issue is arguably waived; however, to the extent a reading of the Rule 1925(b) statement and the statement of questions involved in Appellant's brief in their totality suggest Appellant is challenging the trial court's denial of his motion to suppress the firearm obtained as a result of Officer Lear's search of Ms. Berrios' automobile, we will consider the merits of this claim.

In this regard, Appellant maintains Officer Lear lacked reasonable suspicion to detain him initially and thereafter conducted an illegal search of Ms. Berrios' vehicle and Appellant's bag. He also asserts that any evidence Officer Lear obtained from his two cell phones also should be suppressed. Finally, Appellant avers that any evidence Officers Boyle and Snavely seized

following their search of his person should be suppressed as fruits of the poisonous tree.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). This Court has held that there are three categories of interactions between police officers and citizens.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Fleet*, 114 A.3d 840, 845 (Pa.Super. 2015) (quotation omitted).

Appellant maintains Officer Lear lacked reasonable suspicion to detain Ms. Berrios and him because he did not observe either behave in such a

manner that would indicate they were involved in criminal activity."[3]  He also stresses that he did not run when he initially saw Officer Lear, and the latter did not see him holding a firearm or observe any bulges in Appellant's clothing which might suggest he was concealing one when he entered Ms. Berrios' car.

It is well-settled that police officers may "detain individuals for a brief investigation when they possess reasonable suspicion that criminal activity is afoot." ***Commonwealth v. Brown***, 996 A.2d 473, 476–477 (Pa. 2010) (citations omitted).  Factors relevant to establishing reasonable suspicion include the suspect's temporal and spatial proximity to reported criminal activity, whether the suspect matches the race, clothing, and descriptions of the person involved in the crime, and whether the suspect acts evasively upon becoming aware of police presence. ***In the Interest of D.M***., 727 A.2d 556, 558–559 (Pa. 1999). The officer may also conduct a quick frisk for weapons if he reasonably fears that the person with whom he is dealing may

---

[3] Our discussion concerns Appellant only as Fourth Amendment rights are personal rights which may not be vicariously asserted. "Thus, standing to maintain a motion to suppress [is] sustained only where the search or seizure sought to be challenged [is] claimed to have violated the defendant's own Fourth Amendment rights." ***Commonwealth v. Sell***, 470 A.2d 457, 460 (Pa. 1983).

be armed and dangerous. ***Commonwealth v. Cooper***, 994 A.2d 589, 592 (Pa.Super. 2010).

Upon a review of the record, we conclude Officer Lear had the requisite reasonable suspicion to conduct an investigatory detention of Appellant. While Officer Lear may not have seen Appellant carrying a firearm before he entered Ms. Berrios' vehicle, he testified at the suppression hearing that Appellant matched the description of a man who had been reported moments prior as pointing a firearm at several individuals and he saw him emerge from the precise location where the threats had been made and increase his pace when he noticed a police presence. N.T. Suppression, 8/27/15, at 3-6, 11. In addition, when he noticed Officer Lear, Appellant "power walk[ed]" away and got into the passenger side of Ms. Berrios' vehicle, at which time Officer Lear was concerned he had a weapon. ***Id***. at 6, 10, 15. Under these circumstances, it was reasonable for Officer Lear to suspect Appellant was the individual who had been brandishing a firearm moments prior and to conduct an investigatory stop. Therefore, we find the initial stop of Appellant had been lawful.

Next, Appellant argues the search of Ms. Berrios' vehicle and the book bag found on the backseat were illegal because she had not voluntarily consented to it in light of the coercive environment from which the search resulted. In addition, Appellant posits Ms. Berrios lacked the common authority to consent to a search of Appellant's bag.

This Court has determined that the forcible stop of a vehicle constitutes an investigative detention such that there must be reasonable suspicion that illegal activity is occurring. In addition, police are justified in stopping a vehicle when relying on information transmitted by a valid police bulletin. ***Commonwealth v. Cruz***, 21 A.3d 1247, 1250 (Pa.Super. 2011). As state above, Officer Lear possessed the requisite reasonable suspicion to justify a stop of Appellant based upon the dispatch he had just received.

Next, we must determine whether Appellant established that he had a reasonable expectation of privacy in Ms. Berrios' vehicle, for a defendant who moves to suppress evidence on the basis that a search was illegal has a preliminary burden of establishing standing and a legitimate expectation of privacy in the area searched. ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa.Super. 2009) (*en banc*).

> Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.
> With more specific reference to an automobile search, this Court has explained as follows: generally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.

- 14 -

*Commonwealth v. Maldonado*, 14 A.3d 907, 910-11 (Pa.Super. 2011). *see also Commonwealth v. Millner*, 888 A.2d 680, 692 (Pa. 2005) (reiterating that a defendant cannot prevail upon a suppression motion when he fails to demonstrate that the challenged police conduct violated his own, personal privacy interests).

Appellant presented no evidence at the suppression hearing that he owned the vehicle, that it was registered in his name, that he had permission to use it to store his personal belongings, or that he had a right to exclude another (i.e. a police officer) therefrom. To the contrary, Officer Lear testified Ms. Berrios was the owner and operator of the vehicle and gave him permission to conduct a search thereof. N.T. Suppression, 8/27/14 at 9. Specifically, Ms. Berrios explained she had no knowledge of what had just transpired. When Officer Lear explained to her why he was there, Ms. Berrios acquiesced in Officer Lear's request to search her vehicle told him to "get whatever's in there out of there." *Id*. at 19. Ms. Berrios informed Officer Lear that the gun was not hers and that the bag belonged to Appellant. *Id*. In addition, Ms. Berrios testified at trial that she was the sole owner and driver of the car and that only she and her three children when they were with her had access thereto. N.T. Trial, 2/12/15 at 53-54. Thus, Appellant had no cognizable expectation of privacy in Ms. Berrios' car

and may not challenge the search thereof. *Commonwealth v. Cruz*, 21 A.3d 1247 (Pa.Super. 2011).

For the reasons set forth, *supra*, we next conclude Appellant has waived any claim pertaining to the search of the book bag by failing to present that claim to the trial court in its 1925(b) concise statement. *Commonwealth v. Lord,* 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived"). *see also Com. v. Newman*, 84 A.3d 1072, 1078 (Pa.Super. 2014).[4]

---

[4] We note that even if Appellant had properly preserved this argument, it is clearly meritless. One has no reasonable expectation of privacy in items which he has abandoned. *Commonwealth v. Byrd*, 987 A.2d 786 (Pa.Super. 2009). In *Commonwealth v. Shoatz,* 366 A.2d 1216 (1976), our Supreme Court delineated the test employed to determine whether an abandonment has occurred:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. **United States v. Cowan**, 2d Cir.1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. **United States v. Manning**, 5th Cir.1971, 440 F.2d 1105, 1111. ... The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. **United States v. Edwards**, **supra**, 441 F.2d [749] at 753 (5th Cir.1971) ]; **cf**. **Katz v. United States**, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. **United States v. Colbert**, 474 F.2d 174, 176 (5th Cir.1973). **Id**. 469 Pa. at 553, 366 A.2d at 1220.

*Id*. at 1220.

*(Footnote Continued Next Page)*

Appellant concludes the portion of his argument pertaining to his second issue with a bald assertion that any evidence obtained from the officers' subsequent search of his person should be excluded as the fruit of the previous illegal search of Ms. Berrios' car. In light of the foregoing, this argument also fails. Accordingly, we discern no error by the trial court in denying Appellant's suppression motion.

Finally, Appellant challenges the weight of the evidence presented at trial. Our standard of review of such claims on appeal is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury's verdict did not shock its conscience; thus, our review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013). It is well-settled that the weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. ***Commonwealth v. Forbes***, 867 A.2d 1268, 1272-73 (Pa.Super. 2005). A

_____
*(Footnote Continued)*

When Appellant fled, he left behind all of the personal items he had placed in Ms. Berrios' car, including his book bag which contained $300.00. In addition, as the trial court noted in its opinion, the cash recovered from Appellant's book bag, along with two cellphones and cash found on his person upon his arrest, was evidence pertaining the offense of PWID, of which the jury found him not guilty.

new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa.Super. 2007). Also, an appellate court will not substitute its judgement for that of the finder of fact and may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Forbes*, *supra* at 1273-74.

Appellant's entire argument pertaining to this issue is his assertion that "the Berrios' [sic] had a motive to deny that she placed the firearm under the passenger's seat. Specifically, Berrios could have been charged with the crime of 'Firearms Not to be Carried Without a License (F3)' if she acknowledge [sic] that the firearm was her firearm, and she placed the firearm under the passenger's seat of her car." Brief of Appellant at 17. Following this two-sentence discussion, Appellant concludes the jury's verdict was contrary to the weight of the evidence in that it placed "too great a weight on Berrios' testimony." Brief of Appellant at 17.

Appellant's underdeveloped claim the jury overly emphasized Ms. Berrios' testimony actually challenges the jury's credibility determinations which Appellant essentially requests that this Court reassess; we decline to do so. Moreover, Appellant fails to identify any reason why the trial court abused its discretion in finding the jury's verdict did not shock the conscience. Having reviewed the record, we conclude that the trial court acted within its discretion by determining that the evidence did not shock its

conscience. For these reasons, the issues Appellant raises herein are devoid of merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2016